UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RITA K. FENWICK, Plaintiff,

v.  CIVIL ACTION NO. 3:13-CV-1090-DJH

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY, Defendant.

\*\*\*\*\*

**MEMORANDUM OPINION AND ORDER**

Following an administrative review pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), Hartford Life & Accident Insurance Company (Hartford) ceased paying disability benefits to Rita Fenwick. Fenwick now argues, among other claims, that Hartford breached its fiduciary duty to her as a plan beneficiary through lackluster claims processing procedures. Hartford disagrees that she was entitled to any benefits whatsoever, and it contends that Fenwick cannot prove a breach of fiduciary duty. Hartford asserts that Fenwick's fiduciary duty claim fails both legally and factually and has moved for partial summary judgment. (Docket No. 31) Fenwick's fiduciary duty claim is not sustainable as equitable relief under ERISA, and so the Court will grant Hartford's motion.

**I.  Factual Background**

Rita Fenwick, a former employee of Target, became disabled while covered by Target's long-term disability plan. She received monthly income benefits under that plan for five years. In 2010, Hartford purchased Target's plan in a "reserve buy-out." Through this purchase, Hartford assumed all risk for current claims, including Fenwick's. In October 2012, Hartford terminated Fenwick's benefits, deciding that she no longer qualified as "disabled." (D.N. 31,

PageID # 473-74) Fenwick appealed this decision; Hartford denied her appeal. Fenwick believes that she was, and is, still entitled to her monthly benefits. As part of this suit, she pursues a traditional ERISA claim to recover her benefits. But that portion of the case is not this opinion's focus.

Central to this opinion is Fenwick's argument that Hartford has an inherent conflict of interest that arose directly from its purchase of Target's long-term disability plan: The more Hartford pays in benefits, the less it profits and serves its own financial interests. But as the plan administrator, Hartford also owed a fiduciary duty to Fenwick, the plan beneficiary. She claims that Hartford breached that duty for a number of reasons. Fenwick's protestations revolve around claims that: (a) Hartford utilized a claims process designed to systematically delay decisions; (b) Hartford's personnel automatically accepted the opinions of Hartford's medical reviewers, discounting the opinions of treating physicians; and (c) Hartford trained its reviewers to seek *reasonable* not *accurate* decisions. (D.N. 32, PageID # 487) She wants equitable relief—permissible under ERISA in some form and under certain circumstances—to remedy these alleged breaches of fiduciary duties. After a brief ERISA discussion, the Court will address arguments (a) and (b) together and discuss (c) separately.

## II.   Standard

To grant a motion for summary judgment, this Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Viewing this case in the light most favorable to Fenwick, the non-movant, and drawing all reasonable inferences in her favor, *see Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010), the Court concludes that genuine issues of material fact do not exist as to her claim for breach of fiduciary duty and grants Hartford's motion for summary judgment.

### III. Discussion

ERISA strikes a delicate balance. It constitutes a balancing "between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted). "Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Id*. (citation omitted). The scheme works because it "induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Id*. (citation omitted). Courts give deference to ERISA plan administrators to "promote[] efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation." *Id*. (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)).

But plan beneficiaries may bring lawsuits "to recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2012 & Supp. 2014). Participants "in a covered plan [may] bring a private right of action 'against a person that

3

qualifies as a fiduciary' and breaches that duty under the plan's terms." *Thies v. Life Ins. Co. of N. Am.*, 804 F. Supp. 2d 560, 574 (W.D. Ky. 2011) (citations omitted).

What are the fiduciary obligations of plan administrators? In broad terms, their obligations are "to serve the interest of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). Their principal duties, though, "relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Id*. at 142-43. Qualifying as an ERISA fiduciary requires either (1) being explicitly designated by the plan as a fiduciary, or (2) being an implicit fiduciary by exercising discretionary control or authority over a plan's assets, management, or administration. *Id*. (citations omitted). Hartford does not dispute its fiduciary status.

ERISA also allows for equitable relief in some circumstances. Beneficiaries may bring civil actions to "(A) [] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Of course, "appropriate" is the key modifier. The Supreme Court has explained "that courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (citation omitted). When Congress has "elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be '*appropriate*.'" *Id*. (citation omitted) (emphasis added). The Sixth Circuit ruled

commensurately in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615-16 (6th Cir. 1998), noting that ERISA claimants may not simply characterize a denial of benefits claim as a breach of fiduciary duty claim in order to trigger equitable relief. When an ERISA claimant's injury can be remedied under another ERISA enforcement provision—like § 1132(a)(1)(B)—equitable relief will normally not be "appropriate." *See Thies*, 804 F. Supp. 2d at 574. Recently, the Sixth Circuit buttressed this position, holding that claimants could not pursue a breach of fiduciary duty claim under § 1132(a)(3) "based solely on an arbitrary and capricious denial of benefits" where an § 1132(a)(1)(B) remedy would make the claimant whole. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015).

### A. Systematic Delay and the Use of Experts

Hartford argues that Fenwick's breach of fiduciary duty claim is just a repackaged version of her claim for benefits, and as such, her request for equitable relief is inappropriate. Hartford also takes issue with the viability of Fenwick's legal arguments and with the strength of her factual support. As to Fenwick's arguments regarding systematic delay and the preference for the opinions of Hartford's experts over treating physicians, the Court generally agrees.

#### 1.

Fenwick's systematic delay argument has several problems. For one, Fenwick has no proof of systematic delay. What Fenwick does possess is proof that Hartford may have failed to address her appeal of its denial of her benefits claim within the plan's given timeframe. Admittedly, without further discovery, it would be impossible to determine if there was systematic delay. But the Court believes that such discovery—and the further pursuit of a breach of fiduciary duty claim—would be futile for several reasons.

5

First, this case presents a justiciability problem. Fenwick's primary complaint is that Hartford denied her benefits. If the Court ultimately determines that Hartford wrongly denied her those benefits, it is unforeseeable that she would go through the claims process again. If she is no longer pursuing a claim through processing, she would no longer need to challenge Hartford's supposed systematic delays. That is, once her benefits claim is adjudicated, her fiduciary duty argument is moot. This outcome may have been different if Fenwick were part of a class, *see Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 714 (6th Cir. 2005), but, as she is proceeding only as an individual, her injury can be wholly redressed through § 1132(a)(1)(B).

Second, because Fenwick's primary complaint is the denial of benefits, this triggers the aforementioned restriction that, when a § 1132(a)(1)(B) remedy is available, § 1132(a)(3) will not provide an appropriate equitable remedy.

Third, in all these cases, procedural discrepancies typically do not warrant substantive remedies. *See Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (1996) ("[J]ustice does not require, indeed it forbids, the reversal of a claim decision based on a technical defect."). If a procedural failing would not warrant reversal of an adverse claims decision, it would be inconsistent for it to trigger a claim for breach of fiduciary duty. Indeed, "'nothing in the regulations or in the statute . . . expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits.'" *Russell*, 473 U.S. at 144. The principal obligations of plan fiduciaries relate to the proper management and administration of fund assets, maintenance of records, disclosure of

information, and avoidance of conflicts of interest. *See id.* at 142-43. Not one of these primary obligations suggests that merely taking too long breaches a fiduciary duty.[1]

**2.**

Fenwick's second argument is that Hartford systematically accepts the determination of its own medical reviewers without considering the opinions of treating physicians. Fenwick rails against this practice, arguing that it prevents full and fair review of claims. It might be a practice that would justify further scrutiny except that, in Fenwick's case, none of Fenwick's own treating physicians said she was disabled. (*See* D.N. 35, PageID # 526) If Fenwick's treating physicians did not opine that she was disabled, whether Hartford fully considered the treating physicians' opinion when deciding whether Fenwick was disabled is irrelevant. Thus, this argument fails factually. Even if Fenwick could show otherwise, the argument would fail legally for much the same reasoning as the systematic delay contention.

**B. Accuracy in Claims Decisions**

Fenwick's accuracy argument has more traction. In her complaint, Fenwick alleged that Hartford trains its claims personnel to make *reasonable*—not *accurate*—claims decisions. Hartford admitted that "its claims personnel are trained to make a reasonable decision," but denied "the remaining allegations contained in [the paragraph of the complaint containing Fenwick's accuracy allegation]." (D.N. 35, PageID # 525) To Fenwick's counsel, this answer was an admission that Hartford seeks reasonable, but not accurate, decisions. This contention deserves particular focus.

---

[1] Fenwick's counsel relies on § 1109 to suggest that *any* ERISA misstep—including a timeliness issue like the one Fenwick complains of—could support an equitable suit for breach of fiduciary duty. Counsel's interpretation, however, relies on minimizing a key part of the section. The section does not say that *any* hiccup, like not meeting a 45-day deadline, will warrant a suit in equity; it says that any fiduciary who breaches any *fiduciary responsibility, obligation, or duty* will warrant such a suit.

7

When courts review ERISA claims decisions, they ask whether the denial of benefits was reasonable. *See, e.g.*, *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). So long as a plan administrator's decision is not arbitrary and capricious, courts will not disturb it. *See Schwalm v. Guardian Life Ins. Co.*, 626 F.3d 299, 308 (6th Cir. 2010). That is, courts will uphold benefit denials on review—even if there is evidence that would support finding the claimant disabled—if "there is a reasonable explanation" for the decision supported by "substantial evidence," and the decision came from a "deliberate principled reasoning process." *Id.* (citations omitted).

Regardless of the standard of review, though, Fenwick maintains that ERISA plan administrators still have an obligation to strive for accurate decisions. She contends that Hartford has ignored that obligation. Essentially, Fenwick implies that Hartford has taken advantage of a perverse incentive. The Court understands Fenwick's theory as follows. Hartford knows that its decisions will not be reversed on judicial review so long as they are not arbitrary and capricious. Therefore, if Hartford has a reasonable explanation for denying benefits, has some evidence to support the denial, and goes through the motions in the claims process, it will sometimes be able to deny meritorious claims. Because of this understanding, Hartford has set out to do just that: It has trained its claims processors to look for reasonable explanations, based on some evidence, to deny claims that—if Hartford was trying to reach an "accurate" or "right" decision—it would not deny. The result: Hartford sheds costs and grows profits. In sum, Hartford has breached a fiduciary duty because—seeking to increase profit—it does not even attempt to reach accurate decisions.

Theoretically, it seems plausible that ERISA fiduciaries should be duty-bound to strive for an "accurate" decision. After all, their general obligations are to "serve the interest of

8

participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan." *Russell*, 473 U.S. at 142.  Practically, it seems near impossible to enforce.  Fenwick references a United States Supreme Court case, *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), to support her contention that ERISA demands accuracy.  Though the Court did note that ERISA "imposes higher-than-marketplace quality standards on insurers" because it requires claims processing to be done "'solely in the interests of the participants and beneficiaries' of the plan," it did not *require* accuracy.  *See id.* at 115 (citations omitted).  The *Glenn* Court underscored the importance of "accurate claims processing" in order to provide "'full and fair review,'" but that is not the same as demanding accurate decisions.  *See id*.  ERISA claims reviewers could cross every "t" and dot every "i"—ensuring accurate *processing* through full, fair review—but could still reach an "inaccurate" *decision* in a close case.  Courts give deference on review for a reason: Claims administrators are better positioned to make these determinations than judges, and second-guessing them in the difficult cases impedes the efficiency the system is designed to promote.

      Furthermore, there is apparently some question as to whether an arbitrary and capricious denial of benefits *is* a breach of fiduciary duty.  *See Rochow*, 780 F.3d at 370 n.3 (where the Sixth Circuit assumed, without deciding, that an arbitrary and capricious denial of benefits could itself be a breach of fiduciary duty even though it was "aware of no persuasive authority for th[at] proposition").  If reaching an arbitrary and capricious decision is not a breach of a fiduciary duty, it seems implausible that striving for a reasonable decision—a decision that, by definition, is not arbitrary and capricious—could somehow be a breach of those duties.

      The accuracy argument also suffers other, more grounded, deficiencies.  Fenwick's claim has a causation problem.  That is, the record does not establish that Hartford caused any harm.

9

In her complaint, Fenwick alleged that "Harford's claims personnel are trained to make a reasonable decision, not an accurate decision." (D.N. 35, PageID # 524) Hartford answered, admitting "that its claims personnel are trained to make a reasonable decision." *Id*. It "denie[d][, however,] the remaining allegations contained in Paragraph 23 of the complaint." *Id*. Then, in briefing, Hartford argued that the law does not require claims processors to reach accurate decisions. (*See, e.g.*, D.N. 31, PageID # 483) Fenwick took this argument as an admission that Hartford does not even bother to reach accurate conclusions—its employees are trained to reach inaccurate decisions (to deny claims for benefits) so long as those decisions are reasonable (will not be overturned on review). Yet the Court does not read the events in the same way. Hartford's answer was that it trains its employees to reach reasonable decisions—it implicitly denied that these reasonable decisions were not also accurate. What it said in briefing was a legal argument, not a factual admission. Without this supposed admission, Fenwick offers no proof that Hartford trains its employees to reach reasonable, yet inaccurate, decisions.

Regardless, it seems that striving for an accurate decision would usually come to the same result as searching for a reasonable one. If a "reasonable decision" is one that has a reasonable explanation, is supported by substantial evidence, and is reached after a deliberate review process, then a reasonable decision would also likely be the accurate choice. The difference would matter only in close cases where the opinions of medical experts diverge.

But that is not the case here. Even Fenwick's treating physicians did not opine that she was disabled. In her case, then, if Hartford reached a reasonable decision, it likely also reached an accurate one in denying her benefits. Whether its decision was reasonable, though, is not up for review at this time. The point is merely that her accuracy argument does not stand on firm footing.

For much the same reasons, her argument also has a harm problem. If her treating physicians did not opine that she was disabled, then Hartford's alleged pursuit of merely a reasonable decision would have caused her no harm. That is, if her point is that an accurate decision is one based on full and fair review, then an accurate decision here would have denied her benefits anyway—neither Harford's medical reviewers nor her treating physicians opined that she was disabled. So the question of whether Hartford strove for a reasonable decision or an accurate one is irrelevant. For several reasons, then, her accuracy claim—like her other two breach of fiduciary duty theories—is unavailing. Summary judgment is appropriate.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for partial summary judgment is SUSTAINED and Plaintiff's claim for equitable relief based on a breach of fiduciary duty is DISMISSED WITH PREJUDICE.