NOT RECOMMENDED FOR PUBLICATION

File Name: 21a0025n.06

Case No. 20-5595

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| RITA K. FENWICK, | ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| HARTFORD LIFE & ACCIDENT INSURANCE CO., | ) ) ) | |
| Defendant-Appellee. | ) ) | |

FILED
Jan 12, 2021
DEBORAH S. HUNT, Clerk

**O P I N I O N**

**BEFORE: SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.**

    **McKEAGUE, Circuit Judge.** Hartford Life & Accident Insurance Company (Hartford Life) provided Rita K. Fenwick Long Term Disability (LTD) benefits under a plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). Hartford Life later terminated Fenwick's benefits, and Fenwick brought this suit. Fenwick alleged three claims: breach of contract, breach of fiduciary duty, and disgorgement. The district court granted summary judgment to Hartford Life, holding that Hartford Life permissibly terminated Fenwick's benefits and that the latter two claims were barred as duplicative of the first. Fenwick appeals, and we affirm.

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

# I

Fenwick was a participant in a Hartford Life benefit plan (the Plan) from her previous employment. She worked for the Target Corporation as a "Store Leader." The Plan provides a monthly benefit to participants who become "Disabled." As relevant here, "Disabled" means a participant can't "engage in Any Occupation which will provide an income equal or greater than 128% of the Monthly Benefit." "Any Occupation," in turn, "means any occupation for which [the participant is] qualified, or may reasonably become qualified, by education, training or experience."

The Plan's administrator (before Hartford Life became responsible for the Plan) granted Fenwick LTD benefits under the "Any Occupation" provision in 2007 based on medical issues with Fenwick's back and neck. The previous administrator continued to review Fenwick's case and eventually identified other occupations that Fenwick could do. But the predecessor took no action before Fenwick's claim was transferred to Hartford Life in 2009.

Hartford Life reviewed Fenwick's claim. Fenwick's treating physician told Hartford Life that Fenwick was "unable to do sustained work," but an Independent Medical Exam (IME) concluded she could do "light" work.[1] Consequently, Hartford Life referred the claim for an Employability Analysis Report (EAR), which concluded that Fenwick could do three jobs: "Area Supervisor, Retail Chain," "Office Manager," and "Supervisor, Advertising-Material." Hartford Life concluded that Fenwick was no longer disabled under the terms of the Plan and terminated Fenwick's LTD benefits.

Fenwick appealed. Fenwick provided a new Physical Capacity Evaluation from her treating physician that conflicted with two pre-existing IMEs and a pre-existing Functional

---

[1] Generally, the exertion level of "sedentary" is the lowest and "light" is the next step up. *See* 20 C.F.R. § 404.1567 (defining the terms as applicable in the Social Security context).

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

Capacity Evaluation (FCE), so Hartford Life referred the claim for an independent record review. Hartford Life subsequently obtained a new EAR that took into account the pre-existing medical evidence, the treating physician's PCE, and the independent record review. The new EAR found no jobs Fenwick could do that met the monetary requirement, so Hartford Life reversed its termination decision.

Hartford Life continued to update Fenwick's file over the subsequent years. It obtained new information from the treating physician, a new pain management physician, its Claims Investigation Unit (whose investigation included surveillance), a new ear, nose, and throat doctor, and a treating orthopedist.

With the new information in hand, Hartford Life continued to review the claim. At this point, Hartford Life asked both the treating physician and the treating orthopedist whether Fenwick could work "40 hours per week, primarily seated in nature, with occasional walking and standing . . . [with] the opportunity to change body positions/postures as needed for comfort." The treating physician said Fenwick could but recommended an additional FCE "to assist in this determination." The treating orthopedist agreed without further comment.[2] Hartford Life received an EAR based on all the new information. Because the new EAR found that Fenwick could be an Office Manager, which met the monetary requirement, Hartford Life terminated the claim.

Fenwick appealed and provided new medical evidence from a number of medical providers. With the new evidence, Hartford Life sought an independent record review. Dr. Jerome Siegel and Dr. James Boscardin both completed a review, each of which included discussions with several of Fenwick's medical providers. Dr. Siegel reported that Fenwick's primary treating physician said Fenwick "should be able to perform at least sedentary to light physical demand

---

[2] Hartford Life initially scheduled another IME because it was under the impression the orthopedist would not respond, but it cancelled the exam when the orthopedist replied.

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

work activities with alternating between sitting and standing." Another treating physician was unable to give Dr. Siegel a reason why Fenwick could not do light or sedentary work and told Dr. Boscardin (after hearing about what the surveillance showed) that sedentary activity was "quite possible."

Dr. Siegel and Dr. Boscardin both concluded that Fenwick could do at least sedentary work. Dr. Siegel wrote that Fenwick "should be physically capable of performing at least sedentary to light physical work activities," and Dr. Siegel agreed that "[t]here is nothing [in the record] that would preclude [Fenwick] from being able to perform at a sedentary level." But the pair's exact restrictions were not identical. Dr. Siegel determined that Fenwick "should be able to sit for up to 4 hours out of an 8 hour day [and] stand for up to 4 hours out of an 8 hour day," while Dr. Boscardin determined she could stand and walk for 30 minutes at a time, for a total of 4 hours each every 8 hours, and could sit for an hour at a time.

Hartford Life upheld the termination of Fenwick's benefits. It based the decision on, among other factors, the treating physicians' opinions, the case manager nurse's opinion, the surveillance, and the independent record reviewers' opinions (including their conversations with the treating physicians).

Fenwick sued Hartford Life for three claims under 29 U.S.C. § 1132: a breach-of-contract claim, a breach-of-fiduciary-duty claim, and a disgorgement claim. The district court granted summary judgment to Hartford Life on the latter two, equitable claims, holding that they were duplicative of the breach-of-contract claim. The district court then granted summary judgment to Hartford Life on the breach-of-contract claim. Fenwick appeals both orders.

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

## II

Fenwick raises three issues on appeal: (1) what standard of review should apply; (2) whether the district court erred in upholding the termination of her benefits; and (3) whether the district court erred in holding her breach-of-fiduciary-duty and disgorgement claims to be duplicative of her breach-of-contract claim. With the aid of our recent decision in *Davis v. Hartford Life & Accident Insurance Co.*, 980 F.3d 541 (6th Cir. 2020), which decided a host of similar and identical issues, we affirm.

**A. The arbitrary-and-capricious standard applies.**

We review legal questions de novo, including which standard of review applies to a plan administrator's decision, and we review factual findings for clear error. *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 565–66 (6th Cir. 2013).

Under ERISA, if a plan administrator can show it has discretionary authority to determine eligibility for benefits, then the arbitrary-and-capricious standard applies; otherwise, the review is de novo. *Id.* at 566; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Fenwick argues that the Plan assigns discretionary authority to Hartford Life, but that Hartford Life never exercised that authority. Instead, employees of a distinct but related entity,[3] Hartford Fire, impermissibly made the decisions. And, she contends, because "a body other than the one authorized" made the decisions, de novo review is required. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 365 (6th Cir. 2009) (quoting *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001)).

This argument takes issue with the corporate structure of Hartford Life. Only Hartford Life, through its employees and agents, could make the decisions, but Hartford Life has no

---

[3] Hartford Life and Hartford Fire are distinct corporations within the Hartford Financial Services Group corporate family.

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

employees. Instead, Hartford Fire employees made the decisions. So, in this context, are the Hartford Fire employees also the agents of Hartford Life?

Yes, we said in *Davis*. "In instances like this, where decisionmakers who act on behalf of an authorized plan administrator are employed by another entity within the corporate family, the plan administrator is still exercising (and has not delegated) its discretionary authority." *Davis*, 980 F.3d at 546; *accord Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 378–80 (4th Cir. 2018).

And here the facts are no different than in *Davis*. First, Hartford Life provided a sworn declaration explaining that every employee of the Hartford Financial Services Group is paid by Hartford Fire for administrative reasons. Second, the decisionmakers here review only Hartford Life policies and have no responsibilities regarding Hartford Fire policies. And third, the Plan and Hartford Life's correspondence all displayed the same logo, and letters to Fenwick and her doctors consistently included "Hartford Life and Accident Insurance Co." in the signature block. Thus, Fenwick's argument that Hartford Life had nothing to do with the decisions made about its policies "does not add up as a factual matter." *Davis*, 980 F.3d at 546.

The district court correctly applied the arbitrary-and-capricious standard because its finding that Hartford Life exercised its discretionary authority in terminating Fenwick's benefits was not clearly erroneous. *See id.* at 547.

**B. The district court correctly determined that Hartford Life's decision was not arbitrary and capricious.**

We review de novo whether Hartford Life's termination of Fenwick's benefits was arbitrary and capricious. *See Davis*, 980 F.3d at 547. This "extremely deferential" standard asks only whether the decision was "[(1)] the result of a deliberate, principled reasoning process and [(2)] if it [was] supported by substantial evidence." *Id.* (quoting *Jackson v. Blue Cross Blue Shield*

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

*of Mich. Long Term Disability Prog.*, 761 F. App'x 539, 543 (6th Cir. 2019)). We will uphold the decision if it's "rational in light of the plan's provisions," *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1068 (6th Cir. 1998), giving the terms their plain meaning, *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 512 (6th Cir. 2008), but affording the plan administrator "great leeway" in interpreting ambiguous terms, *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995).

We affirm the district court's holding that Hartford Life's decision was not arbitrary and capricious. Fenwick attacks the Hartford Life's reasoning process on three grounds: (1) that Hartford Life failed to provide Fenwick with an in-person examination; (2) that Hartford Life failed to consider the effects of Fenwick's prescriptions on her ability to work; and (3) that there were various analytical errors in Hartford Life's EAR. Fenwick then argues (4) that the termination decision was unsupported by substantial evidence.

*1. Hartford Life's reasoning was not arbitrary and capricious because of the cancelled IME.*

Fenwick argues that the cancelled IME "deprived Ms. Fenwick of a full and fair review." *See* 29 U.S.C. § 1133(2). As support, she argues that file reviews are sometimes less reasonable than physical exams. And we have at times "f[ou]nd that the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).

But this isn't one of those cases. First, as the district court noted, Fenwick had already undergone two IMEs. Second, a physical exam may be preferable when the other evidence in the administrative record is contradictory or when some medical opinions are "incredible on their face." *Id.* at 296. Here, Hartford Life reasoned that a third IME was unnecessary because, after

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

Hartford Life scheduled it, both Fenwick's treating physician and treating orthopedist sent letters expressing the medical opinion that Fenwick had the "functionality to perform activity as follows: 40 hours per week, primarily seated in nature, with occasional walking and standing." That opinion comported with the vast majority of evidence already in the record. With this unified evidence, Hartford Life's decision to cancel the third IME was not arbitrary and capricious. *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 663 (6th Cir. 2013) (explaining that a decision not to order a physical exam is less problematic when the file reviewers agree with the treating physicians).

    *2. Hartford Life did not fail to consider the effects of Fenwick's prescriptions.*

Fenwick argues that Hartford Life's "blind[] accept[ance]" of the reviewing physicians' medical opinions regarding Fenwick's prescriptions rendered Hartford Life's decision arbitrary and capricious. Failure to consider a claimant's medications can weaken the reasonableness of a decision. *See Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 265 (6th Cir. 2006). But again, Fenwick fails to persuade that the facts here make the general proposition applicable.

Fenwick's argument rests on the generality that some of the medications, including narcotics, that Fenwick was taking could have side effects that affected functionality. Yet Fenwick points to just one instance in the record (vague assertions of "problems with medication" notwithstanding) that suggests she was experiencing specific side effects. And even there, Fenwick (rather than her doctors) only briefly mentions that her pain medication caused stomach aches. So Fenwick's conclusion that Hartford Life should not have relied on Dr. Siegel's and Dr. Boscardin's record review and discussion with Fenwick's treating physicians is unpersuasive.

Due to the lack of support in the record, this case is not like *Smith*. In *Smith*, the plaintiff's treating physician drafted a letter stating that the plaintiff's medications would make it "very

- 8 -

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

difficult to function under any circumstances." *Id.* at 264. But the plan administrator's reviewing physician did no more than list plaintiff's medications in his analysis, and the administrator did not even provide the reviewing physician with the treating physician's letter. *Id.* at 264–65. We thus found that the administrator's analysis was insufficient. *Id.* at 265. Here, Hartford Life performed a more thorough analysis. It "asked both reviewing doctors to comment on whether or not medications were impacting [Fenwick's] function" and "directed the reviewing physicians to speak with Ms. Fenwick's treating physicians." This review yielded no indication that the medications were significantly impairing Fenwick. Hartford Life's reasoning related to Fenwick's prescriptions therefore was not arbitrary and capricious.

   3. *Hartford Life's EARs were not inherently flawed.*

Fenwick argues that the 2012 EAR that found that Fenwick could be an Office Manager was based on several flawed assumptions. If true, Hartford Life's conclusions based on the EAR would be in question. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361–62 (6th Cir. 2002).

Fenwick makes three arguments. First, Fenwick argues that the EAR's understanding of her capabilities did not match the medical record. Second, Fenwick argues that she is not qualified to be an Office Manager because she has no relevant experience. And third, Fenwick argues that the EAR arbitrarily used the national median wage to determine whether an Office Manager job would provide the requisite salary. "[H]onoring the extreme deference due the [Plan] administrator," none of Fenwick's arguments render Hartford Life's decision arbitrary and capricious. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1067 (6th Cir. 2014).

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

      a. <u>The vocational analysis's and medical opinions' understandings of Fenwick's capabilities matched.</u>

Fenwick argues that the vocational expert's opinion was arbitrary and capricious because the EAR, the treating physicians, and the reviewing physicians had different understandings of Fenwick's functional capabilities. A vocational expert cannot opine on what jobs a claimant can do if the vocational expert doesn't have a "complete, accurate understanding of the claimant's restrictions and limitations." *Neaton v. Hartford Life and Accident Ins. Co.*, 517 F. App'x 475, 485 (6th Cir. 2013); *accord Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015). So the vocational expert's opinion would be questionable if the EAR's understanding of Fenwick's capabilities didn't match what the doctors said.

But they did match. The EAR incorporated verbatim the limitations to which the treating physicians had agreed: "work 40 hours per week, in a capacity that is primarily seated in nature, with occasional walking and standing . . . . Afforded will be the opportunity to change body positions/postures as needed for comfort (by walking, standing, or moving about)." Dr. Siegel, one of the reviewing physicians, similarly concluded that Fenwick "should be able to sit, stand, and walk for at least 30 minutes at a time and with frequent position changes . . . . She should be able to sit for up to 4 hours out of an 8 hour day, stand for up to 4 hours out of an 8 hour day . . . . [And t]he ability to change positions throughout the workday is recommended." Dr. Boscardin, the other reviewing physician, generally agreed while using slightly different verbiage. Insofar as Fenwick argues that no reasonable mind could find these two sets of restrictions are reconcilable, thereby resulting in a flawed EAR, we disagree.[4] *See Morris v. Am. Elec. Power Long-Term*

---

[4] As for the argument that the vocational expert did not explain how an Office Manager position could accommodate Fenwick's need to shift positions, the district court held that Fenwick forfeited this argument and we will not accept the invitation to reach merits arguments not considered below. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

*Disability Plan*, 399 F. App'x 978, 988 (6th Cir. 2010) ("Rather, [examining doctors] provided information on [claimant's] relevant physiological and psychological limitations, which were reviewed by the vocational counselor who prepared the Employability Assessment Report that concluded [claimant] could work [under the Any Occupation definition].").

> b. It was not arbitrary and capricious for Hartford Life to determine that Fenwick could "reasonably become qualified" to be an Office Manager.

Fenwick argues that she could not reasonably become qualified to be an Office Manager because her previous experience was wholly unrelated. Fenwick's main argument is that the Office Manager's Specific Vocational Preparation (SVP) score of 7 requires two to four years of training. The SVP, as defined in the *Dictionary of Occupational Titles*, is "the amount of lapsed time required by a typical worker" to qualify for a specific job. *Specific Vocational Preparation (SVP)*, O*NET OnLine, https://www.onetonline.org/help/online/svp (last updated Nov. 17, 2020). An SVP can be satisfied by "[e]ssential experience in other jobs," *id.*, so Fenwick argues that none of her previous experiences would serve as enough experience to shorten or eliminate the necessary training to render it "reasonabl[e]" for her to become qualified. *See Davis*, 980 F.3d at 549 (noting that SVP levels are set for "typical workers" and training time required can be prorated for claimants with relevant experience); *Griffin v. Hartford Life & Accident Ins. Co.*, No. 6:16-CV-00024, 2017 WL 384384, at *8 (W.D. Va. Jan. 25, 2017) (using "common sense" in holding that a high SVP level can be mitigated by relevant experience in similar positions), *aff'd*, 898 F.3d 371 (4th Cir. 2018); *Potts v. Hartford Life & Accident Ins. Co.*, 272 F. Supp. 3d 690, 718 (W.D. Pa. 2017) (same).

The 2012 EAR addendum found that Fenwick's experience was a "Good" match for the Office Manager position, requiring "Some [training] in Tools and/or Materials" for her to get up to speed. The EAR based this on Fenwick's experience as a "Store Team Leader" for four and a

Case 3:13-cv-01090-CHB-CHL Document 126 Filed 01/12/21 Page 12 of 20 PageID #: 3783
Case: 20-5595 Document: 30-2 Filed: 01/12/2021 Page: 12

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

half years, a "Logistics Executive Team Leader" for five and a half years, and an "Administrative Assistant" for eight months.

Even looking only at the Store Team Leader's responsibilities, there is a reasonable fit between them and the responsibilities of an Office Manager. A Store Team Leader "executes the highest level of authority and leadership within the store [and d]irects the merchandising, operation and personnel functions of the store toward attaining maximum profit" and achieving success in other respects. An Office Manager "[c]oordinates activities of clerical personnel," "[e]valuates office production, revises procedures, or devises new forms to improve efficiency of workflow," "[p]lans office layouts and initiates cost reduction programs," and "hire[s], train[s], and discharge[s] workers," among other responsibilities. The EAR reasoned that the two were related because "Ms. Fenwick has demonstrated the following work traits: directing, controlling, or planning activities of others, influencing others, dealing with people, making judgments and decisions, and performing a variety of duties which are the same or similar."

The jobs' responsibilities are not identical. But that's not the question. The question is whether Hartford Life's conclusion that Fenwick could "reasonably become qualified" to be an Office Manager considering her ten years as a Store Team Leader and a Logistics Executive Team Leader, as well as her eight months as an administrative assistant, was reasonable. It was. Both jobs, for example, involve exercising authority over employees, training employees, and thinking critically to reduce costs and maximize profits. And the "reasonably become qualified" language in the Plan means this is not a case where the Plan required the claimant to be immediately ready to do the new job. *See, e.g.*, *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 F. App'x 445, 460 (6th Cir. 2006).

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

Fenwick's lone citation for this argument states that "a claims administrator often is required to reflect a minimal vocational analysis." *Feggins v. Reliance Standard Life Ins. Co.*, No. 11-073, 2013 WL 4782726, at *5 (W.D. Wis. Sept. 6, 2013) (emphasis omitted); *accord Brooking v. Hartford Life & Accident Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006). That requirement was met here, where the vocational analysis "carefully reviewed [the selected positions] to ensure they would meet the claimant's functional capabilities." *See also Curry v. Eaton Corp.*, 400 F. App'x 51, 71 (6th Cir. 2010) (holding a similar analysis to be adequate).

Giving Hartford Life the "extreme deference" that's due, *McClain*, 740 F.3d at 1067, the reasoning was not arbitrary and capricious. It was reasonable to conclude that Fenwick would not be starting from square one, so it was reasonable to conclude that Fenwick is either currently qualified to be an Office Manager or could soon become qualified.

c. <u>Using the national median wage was not arbitrary and capricious.</u>

Fenwick argues that it was arbitrary and capricious for the vocational expert to rely on the national monthly median wage in assessing whether the Office Manager position was sufficiently remunerative. The Plan required that the potential position "will provide an income equal or greater than 128% of the Monthly Benefit."

Fenwick argues that the use of the median data was inappropriate in this case because of Fenwick's lack of relevant experience. The thrust of her argument is that the policy uses the language "will provide," but it is not certain that Fenwick—starting a new job after seven years out of the workforce—would begin earning the median wage on the first day. But that logic again presumes that Fenwick is starting from square one; instead, Fenwick's decade of related experience could earn her more than an entry-level salary.

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

Nevertheless, the case law is not on Fenwick's side. As the district court noted, the two out-of-circuit district court cases upon which Fenwick relies do not support her argument. First, both depended on a de novo standard of review. *Flaaen v. Principal Life Ins. Co.*, No. 15-589, 2017 WL 4286358, at *7 (W.D. Wash. Sept. 27, 2017); *Contreras v. United of Omaha Life Ins. Co.*, 250 F. Supp. 3d 338, 342 (N.D. Ill. 2017).

Second, the language of the plans is different. In *Contreras*, for example, the plan had a specific time limitation by which the claimant's new job needed to pay the required amount. *Contreras*, 250 F. Supp. 3d at 339. Here, reading the Plan provisions together, the Plan requires only that the participant "may reasonably become qualified" for a position which "will provide" the required amount. "Will provide" does not give a deadline, and "reasonably become qualified" can be read to provide more temporal flexibility. Given that "[w]e must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants," *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004), we can't say this language mandates the required amount as an immediate salary. *See Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 363 (7th Cir. 2017) (applying the same analysis to a similar provision). And for the same reasons, use of the median amount, as opposed to the 25th percentile or the 75th percentile, does not doom the EAR. While the district court in *Flaaen* disfavored the use of mean and median wage data, *see Flaaen*, 2017 WL 4286358, at *2, we have taken no issue with the use of mean wage data in the past. *See, e.g., Davis*, 980 F.3d at 549 (accepting use of median wage data in light of plan's use of the flexible term "earnings potential"); *Wooden v. Alcoa, Inc.*, 511 F. App'x 477, 480 (6th Cir. 2013) (using mean); *cf. Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 974 (9th Cir. 1999) (using median). Given that we have held an expert's inconsistent use of percentiles within the same case without explanation to be acceptable, *see Leppert v. Liberty Life Assurance*

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

*Co. of Bos.*, 661 F. App'x 425, 439 (6th Cir. 2016), and given the inexact language of "reasonably become qualified" and "will provide" used in the plan, we won't second guess the use of the median wage here.[5]

    *4. Hartford Life's decision was supported by substantial evidence.*

Fenwick argues that "the evidence in the Administrative Record *supports* Ms. Fenwick," so Hartford Life's termination of benefits was not based on substantial evidence. But under the substantial evidence standard, we ask only whether Hartford Life's decision was within the realm of reasonability; if it was, we "defer[] to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence supported Hartford Life's decision that Fenwick was no longer disabled under the terms of the Plan.

Fenwick argues to the contrary by asserting that there wasn't evidence that Fenwick could do "sedentary" work of any kind. Fenwick stresses that the Office Manager position is sedentary, and sedentary work "is generally associated with sitting for about six hours in an eight-hour workday." *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 172 (6th Cir. 2016). Fenwick's argument picks up some traction because some of the reviewing physicians' statements, in isolation, are inconsistent with that general definition. Dr. Siegel found that Fenwick "should be able to sit for up to 4 hours out of an 8 hour day [and] stand for up to 4 hours out of an 8 hour day," and Dr. Boscardin found that Fenwick could stand and walk for 30 minutes at a time, for a total of

---

[5] Fenwick also argues that *Williams v. Target Corp.*, 579 F. App'x 390, 392 (6th Cir. 2014), renders the use of median wage data arbitrary and capricious, but, as we noted in *Davis*, 980 F.3d at 549, *Williams* concerned "where a report fails to specify how it computed a median wage figure," a problem not present here. *Williams* cast no general doubt on the viability of the use of median wage data. *See* 579 F. App'x at 392.

Case 3:13-cv-01090-CHB-CHL Document 126 Filed 01/12/21 Page 16 of 20 PageID #: 3787
Case: 20-5595 Document: 30-2 Filed: 01/12/2021 Page: 16

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

4 hours each every 8 hours, and could sit for an hour at a time. Thus Dr. Siegel's 4-hour sitting limitation is particularly at odds with the general definition of sedentary.

But both doctors also "concurred that [Fenwick] should have the physical capacity of at least sedentary physical demand work activity." Dr. Siegel added that "Fenwick should be physically capable of performing at least sedentary to light physical work activities," and Dr. Boscardin reiterated that "[t]here is nothing [in the record] that would preclude [Fenwick] from being able to perform at a sedentary level." That's enough for a reasonable mind to conclude that both the reviewing physicians thought Fenwick could do sedentary work.

Even if it weren't enough, the argument runs into at least two other issues. First, in this case the question is not whether the evidence supports whether Fenwick's capabilities meet the general definition of sedentary, but rather whether Fenwick's capabilities meet those required for the Office Manager position. And the EAR selected the Office Manager position while specifically accounting for "[a]fford[ing] . . . [Fenwick] the opportunity to change body positions/postures as needed for comfort."[6]

Second, even if the two reviewing physicians' opinions did not support a finding that Fenwick could do the Office Manager job, the two treating physicians' opinions do. For example, one "agree[d] that [Fenwick] should be able to perform at least sedentary to light physical demand work activities with alternating between sitting and standing." Most importantly, both checked the "Yes" option[7] when asked if Fenwick could work "40 hours per week, primarily seated in nature, with occasional walking and standing . . . [with] the opportunity to change body positions/postures as needed for comfort." These opinions, combined with the many other

---

[6] Again, we won't disturb the district court's holding that Fenwick forfeited her argument that the EAR lacked explanation on this point.

[7] One treating physician added an asterisk to the box, saying that she recommended a Functional Capacity Examination "to assist in this determination as well."

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

supportive statements from various medical providers as outlined by the district court are sufficient to support Hartford Life's conclusion. *See Brooking*, 167 F. App'x at 549 (reaching the opposite conclusion based "on the uncontested fact that [the participant could] not maintain a seated position for more than an hour at a time"); *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016) (reaching the opposite conclusion based on the fact that "every physician and chiropractor who treated [the claimant] determined that he could not sit for more than four hours a day"). We find no issue with the district court's conclusion that "the majority of medical opinion[s] concluded that Fenwick could return to work with certain limitations" and hold that Hartford Life's decision was based on substantial evidence. *See Davis*, 980 F.3d at 549–50.

**C. The equitable claims were duplicative of the breach-of-contract claim.**

The district court granted Hartford Life summary judgment on Fenwick's equitable claims. We review the district court's grant de novo, asking whether there is a genuine dispute of any material fact and whether the movant is entitled to judgment as a matter of law. *Black v. Pension Benefit Guar. Corp.*, __ F.3d __, 2020 WL 7688252, at *2 (6th Cir. Dec. 28, 2020). For largely the same reasons as in *Davis*, we affirm the district court's grant of summary judgment on the equitable claims.

Under ERISA's § 502(a)(3), a plan participant may sue "to obtain other appropriate equitable relief (i) to redress . . . violations [of ERISA] or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). But this catchall provision only catches claims when "[§ 1132] does not elsewhere remedy" the alleged injury. *Davis*, 980 F.3d at 550 (alteration in original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). Accordingly, the equitable claim must be "separate and distinct from the denial of benefits" or the denial-of-benefits remedy

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

must be inadequate. *Id.* (quoting *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (en banc)).

Fenwick asserted two claims under § 502(a)(3): a breach-of-fiduciary-duty claim and a disgorgement claim. For the breach-of-fiduciary-duty claim, Fenwick alleged that Hartford Life systematically delayed decisions, automatically accepted the medical opinions of Hartford Life's reviewers over treating physicians, and trained its reviewers to complete reviews that will survive judicial scrutiny rather than render accurate reviews. For the disgorgement claim, Fenwick sought to recover Hartford Life's earnings from her improperly terminated benefits. The critical question is whether Fenwick made a "showing that the benefits recovered . . . plus attorney's fees awarded, plus the prejudgment interest that may be awarded on remand[] are inadequate to make [Fenwick] whole." *Rochow*, 780 F.3d at 371–72 (emphasis omitted); *accord Strang v. Ford Motor Co. Gen. Ret. Plan*, 693 F. App'x 400, 405 (6th Cir. 2017).

Fenwick did not make that showing because the alleged injuries from each of her equitable claims would be remedied identically to her main ERISA claim: by recovering the benefits. The plaintiff in *Davis* made the same breach-of-fiduciary-duty and disgorgement claims, based on the same allegations, and we held that the plaintiff showed neither "a distinct injury from the termination of . . . benefits" nor that "the remedies available under § 1132(a)(1)(B) [were] inadequate." *Davis*, 980 F.3d at 550.

Fenwick argues that she failed to make the showing because she needs discovery to demonstrate why the remedy under § 1132(a)(1)(B) is inadequate. But factual development will not cure the legal insufficiency of Fenwick's equitable claims. We held the claims to be legally insufficient in *Davis*, and a litigant cannot answer the legal question of whether a loss-of-benefits

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

remedy under § 1132(a)(1)(B) is adequate by developing facts to show that their claim would succeed. *See id.* at 551.

Fenwick's reliance on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), and *Hill v. Blue Cross & Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005), is misplaced. Fenwick argues that *Amara* allows plaintiffs to recover "damages for benefits and all equitable relief to ensure they are made whole." The plaintiff in *Rochow* made the same argument, and we disagreed. *Rochow*, 780 F.3d at 374. We explained that the argument "misses a logical step: 'other appropriate equitable relief' is not necessary to make [the plaintiff] whole." *Id.* at 375 (quoting 29 U.S.C. § 1132(a)(3)). And Fenwick misses the same step here. She has not shown that there is any distance between recovery of the claimed benefits (and potentially attorneys' fees and prejudgment interest) and being made whole. *See Davis*, 980 F.3d at 551 ("Yet unlike the claimants in *CIGNA*, [the plaintiff] was authorized to seek relief for the termination of his benefits under § 1132(a)(1)(B), thereby foreclosing other avenues for relief.").

And the exception we made in *Hill* to the general rule prohibiting duplicative equitable claims does not apply because Fenwick brought her claim as an individual rather than a class. In *Rochow*, we noted that "*Hill* recognized an exception to [the general rule disallowing a § 502(a)(3) claim duplicative of a benefits claim] where '[o]nly injunctive relief of the type available under [§ 502(a)(3) would] provide the complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in which it administers all of the Program's claims." *Id.* at 373 (second, third, and fourth alterations in original) (quoting *Hill*, 409 F.3d at 718). Seizing on *Hill*'s language about plan-wide relief, Fenwick notes that her complaint alleges that Hartford Life's fiduciary-duty breaches harmed her "as well as other participants."

Case No. 20-5595, *Fenwick v. Hartford Life & Accident Ins. Co.*

But interjections about harm done to others outside of the lawsuit (especially when such allegations are devoid of factual support) do not convert this case to a class action. Her complaint seeks relief for only herself. Her prayer for relief asks for (1) judgment in her favor, (2) attorney's fees, (3) pre- and post-judgment interest on the unpaid benefits of Fenwick's policy, and (4) "any and all other legal or equitable relief to which she may be entitled." It is "rarely justified" to grant class relief in an individual suit, and here the complaint does not even request that relief. *Sch. Dist. v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 301 (6th Cir. 2009) (en banc) (McKeague, J., concurring) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003)). So our previous allowances of equitable claims in pursuit of plan-wide relief in class actions do not aid Fenwick. *Hill*, 409 F.3d at 718; *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 421 (6th Cir. 1998).

Whether Hartford Life changes its plan-wide policies or not, Fenwick's recovery would remain the same: her benefits. The potential remedy to her alleged injury is thus limited to the benefits, attorneys' fees, and prejudgment interest. Because the equitable claims would afford no additional remedy, the district court properly granted summary judgment to Hartford Life on the equitable claims.

## III

The judgment of the district court is affirmed.